Our next case is Lumi Tribe on the Lumi Reservation v. Washington v. United States, case number Mr. Rasmussen, you may proceed. You have five minutes of rebuttal time reserved. May I please report? My name is Jeff Rasmussen. I am the attorney for the Lumi Tribe, Fort and Hopi Housing Authority. In this case, ultimately I think the simplest remedy, and one that would be sufficient, would be for this court to remand this case to the Court of Federal Claims for two decisions. The one being, are the tribe's contract fiduciary duty breach of trust claims viable? And two, for any claims that are outside the scope of the Court of Federal Claims jurisdiction, should those cases be, or those claims be transferred under 28 U.S.C. 1631. As we discussed in our briefing. Is that an either or or is it both? Both those things should happen. If you got your contract and fiduciary claims remanded back to the Court of Federal Claims, what more could possibly be transferred to another court? No, I think that if we got those claims transferred back to the Court of Federal Claims for consideration of whether they should proceed, the United States would be making a motion to dismiss them. And that this court would then clarify that if you're going to dismiss any claims, then you would have to consider 1631 at that point. We'd certainly be. You would be arguing that to the Court of Federal Claims though? Right, yes. That's not, that wouldn't be something for us to decide now on this appeal? No. Okay. Okay, yes. With regard to, as we discussed in our brief. Just to be clear, are you saying that we could not order the Court of Claims to vacate its dismissal order and to make the transfer? I think you can, could decide the 1631 issue. You could vacate and order it to transfer. As to whether you should, in our brief we discussed two possibilities. One would be this court just remanding it back to the Court of Federal Claims to make the 1631 decision. Somebody has to make it. Make the 1631 decision. Or alternatively, this court could decide it. This court often doesn't decide issues in the first instance. There isn't a lower court decision on this issue of whether the case claim should be transferred. In general, it's a discretionary issue. But I think the law is clear enough that this is one that this court, it would be reasonable for this court to actually make the decision itself, given the facts here. On the contract claims. Do we have the contracts in the Joint Appendix? I looked and I didn't see it. I don't, they were not, they're not in the Joint Appendix. They're just one page documents. There are a number of them. There was one each year for each tribe. And they just, they are more or less, the United States is agreeing to provide funding. Tribes agreeing to accept the funding. The United States will follow the applicable law and the tribe will follow the applicable law for the amounts that are funded. They're short contracts. Are they signed by both parties? Yes, they're signed by both parties. And in this particular case, as we talk about, I think the tribe's claim on the contracts, as a contract claim, they're fairly straightforward and within the Court of Federal Claims jurisdiction. We're asserting that the tribes provided the services. Here we're talking about housing. We're talking about houses that the tribes had. They had their expenses for them. They provided that service consistent with their end of the contract. And they received the funds from the United States. We're still in this hypothetical world where we conclude that our mandate in the 2017 decision was overly broad. And so therefore, maybe there's a contract claim that needs to be heard. But I'm trying to understand what is the theory for why a breach of contract claim would still be viable in light of what we said two years ago, that the Nahasda Act itself is not money mandating. And you're telling me you have these one-page agreements that are basically calling for the terms of the Nahasda Act to be executed by the government. So what would be the jurisdictional hook for a breach of contract claim as being a claim for money damages when we have already said and we're bound by the ruling that Nahasda itself is not money mandating? What we have in the prior decision was that any money that would be ordered as part of the Nahasda claim would come with strings attached and therefore was not within the Court of Federal Claims jurisdiction. Of course, we don't agree with that. We think that is a misreading of Bowen, but that's what the court decided. But it said, because there are strings attached. Now when we're talking about a contract claim, we're talking about a claim for services that were already rendered. And we aren't talking about a naked money judgment then. We are talking about pay them for the services they provided, the housing that they provided. So there are no strings attached to that money. In a straight contract claim, there are no strings attached. The services were already provided many years ago. The tribes had that factual issue, the disputed factual issue in the case and why summary judgment was denied was there was an uncertainty about which housing, the number of units of housing that were provided. And once that is determined, then we can calculate the exact amount that the tribes were owed for the housing they already provided. So there are no strings attached to that money. And that's what then brings it outside of the claim, the straight and hosta claim. And that's where, I think, as I see it in where we are today, there's certainly a, the United States could have a different interpretation, but there's a very strong argument that the contract claim, the independent contract claim, or the independent breach of trust claim can't scope of the fire decision and that we needed some reasoned consideration of that issue. When we came here in the last case, we were talking solely about the NAHASDA issue, whether NAHASDA was money mandating. That was the sole issue. That was the sole issue in the order that was appealed. But I seem to recall the government's opening brief in the last litigation, in the last appeal, their argument, well, yes, you're right. They were talking about the NAHASDA Act and why it's not money mandating. But the bottom line focus of the brief was that there was no jurisdiction over this complaint, that the Court of Federal Claims lacked Tucker Act jurisdiction. And so I guess the question would be then, your side, I can't remember, were you the attorney? I was not the attorney. Well, Lume Tribe's attorney, in response, in filing their red brief, why didn't they explain that they had alternate grounds of jurisdiction beyond the argument that NAHASDA is a money mandating statute? I mean, that would have been the time to inform the Court that there were also these breach of contract and fiduciary claims. And I would agree with the Court that it should have been done, but as to whether it had to be when we're dealing with an interlocutory order that did not address those claims either. And so our appeal was actually on the interlocutory order. The United States argument was that if you agree with them on the NAHASDA claim, the case should be dismissed. But the actual argument and the issue was a specific order. And unlike other cases, we sort of have a specific order, and that order is solely related to the money mandating issue and to the related issue of whether a claim for illegal exaction requires that a statute be money mandating. Those were the only two issues that were really in that order that was on appeal. And so the appeal, because it was by permission, is limited to those issues. So it should have been clarified to the Court. But as far as what the Court also has a duty, this is the only issue that's before us is whether to affirm or reject this order that is in front of us, and then to make a decision based upon that. Assuming that you find yourself back in Colorado before the district court there, what's the relief that you would be looking for? And isn't that relief barred by the Tenth Circuit ruling in the Maddox case? We don't think so. The Tenth Circuit case, the decision, its primary disagreement was with the lower court directing that certain funds be used, specifying that it could be any funds in the United States. We think we can structure an order that gives us effective relief without coming up against that Tenth Circuit limitation. Let's assume I'm skeptical of that. What would be the theory for why we could reasonably conclude that the district court in Colorado is a court that has jurisdiction over this claim so that we could transfer it there? Well, the 1631 standard is whether the court, for this court, is whether that court had jurisdiction at the time the complaint was filed. And it certainly would have had jurisdiction at the time the complaint was filed. And then those issues... You just said certainly, and I need to hear a because. Because why? Because right now, assume for the moment, I think that your position runs right into the teeth of the Tenth Circuit Modok opinion. The Tenth Circuit Modok opinion has to do with whether there's an effective recovery. The Tenth Circuit affirmed that the tribes' rights were violated and affirmed those parts of the order. The question would be whether we have an effective remedy. And that is not an issue that we would decide on a 1631 standard, because the question is whether we had jurisdiction at the time. And we had jurisdiction at the time that the case was filed. So this court would remand it to or send the case to the district court. And the district court would then have to make those decisions. The United States would be making a mootness argument, but it would not be a mootness that the case was not... There wasn't jurisdiction in 2008. The 1631 standard is whether there was jurisdiction in 2008. I just am lost as to what kind of relief you could get. I think we can get relief. When they... When, as I understand the Tenth Circuit opinion, you have to be trying to capture the res from those particular appropriation years from which you argue you had money funding unfairly taken from you. And if those res are long exhausted, then there's really nothing left. No, because the court there has full equitable power. And we believe it has then the authority because the United States violated the law. That court can issue a judgment the United States violated the law and then require a remedy that it would be not to... Is that what it did in Modoc? No, it didn't. What did the Tenth Circuit do in Modoc? The tribes ended up with their funds in Modoc. The tribes in those... Well, that is on a completely unusual circumstance. It wasn't based on like a legal theory. Well, I'm not sure. But what we have, as I understand the Tenth Circuit decision, is that the tribes cannot get an order that says, expend this from all available funds. But the tribes can get an order that they are entitled to relief. It's still at this point. And the United States then would have, we believe, a duty to comply with that order. Okay, you're willing to... Yes, and I understood that. Thank you. Counselor Gillingham? Yes, good morning, Your Honor. And may it please the court. So I'd like to just attack one of the premises that Mr. Rasmussen referred to. He said, we own the houses and we provide services. This is a reference to what they refer to as the glaring error in their briefs. The premises, what they say is that we had money and you took it away from us. This was part of the illegal exaction argument. But in fact, if you read what this court has said, if you read what the claims court has said, if you read what they have said in their complaints, in fact, they never had this money. So for example, in the rehearing petition, they complained that the tribes have spent money or they complained that the government took money, exacted money via a downward adjustment from the tribe's subsequent grants. In other words, we have been not giving money in the future. If you don't have that money, of course, you can't spend it. At page one of their rehearing petition, at docket entry 76, they said the United States required the tribes repay the grant funds by reducing future grant awards. Again, this is what's the case, that money is being withheld in the future, not money they have spent and they are entitled to keep. Ultimately, if you read everything they've said, what they're really saying is not that they had the money that was recaptured, they had the money that was overpaid and they may very well have spent that. And this is what they said from the beginning. For example, the complaint in paragraph 28 says, HUD had no lawful authority to recapture grant awards by adjusting future grant allocations. Again, they're talking about the future. In Lummi 2 in 2012, Judge Weiss credited all this, saying that the government recaptured the money through the offset of overpayments against underpayments and through the reduction of subsequent years' grants. This court then, following on all that state of affairs, said in its decision to remedy this, HUD decided to adjust the grant amounts plaintiffs would resolve in the ensuing years. So we're only ever talking about money that was not given in the future and they're lacking future funds. There was simply no projects to undertake with those future funds. Second- Did the government stake out a different position in the Tenth Circuit than it did here before the Federal Circuit? No, Your Honor. What we've said consistently is that circuit or district court there, most of these cases have been in Colorado, has jurisdiction. That court has been exercising jurisdiction since 2005 and has awarded monies without the objection of the United States. So the district court in Colorado had jurisdiction? That's right. What it could not do, however, was issue damages. So the waiver of sovereign immunity that we have found in Hazden, we've said this to the Supreme Court, we've said this in the Modoc decision, we've said this in the district court in Colorado- This is damages under the Tucker Act, correct? Right, that the court- But what about under the contract claims? So this brings up the scope question. The question is, what did this court's earlier decision provide for as a scope of interlocutory review? We moved for interlocutory review and we had to prove three things, two in particular where that was controlling- I don't think this court decided or addressed the contract claims. You probably won't find the word contract in there and that's because it was never raised by the other side? Correct, it wasn't an issue. Oh, it was definitely an issue though. Not in the interlocutory appeal. Sure, and so this is the scope question. And so the question is, what was the scope? So we, in order to persuade this court to take interlocutory review, we had to prove a number of things. First of all, there was a controlling question- So if we were to find that it wasn't within the scope, then wouldn't you agree that in the interest of justice, we should send this back to Colorado? No, that's a separate question as whether under 1631 the Colorado court could do anything. Or send it back to the Court of Federal Claims. And the Court of Federal Claims couldn't do anything. First of all, this court directed the Court of Federal Claims to dismiss for lack of subject matter jurisdiction. It could have said, we remand for further proceedings consistent with our judgment. But if we adopt your position, we effectively close the courthouse doors on the tribe on claims that have been left unadjudicated. Well, they have for many tribes. In fact, for- Well, I'm talking about this tribe. Okay. So they- And I'm talking about this case. Right. And so I'm talking about the law. And it has only affords a limited waiver of sovereign immunity. And that is for under the APA. And it is for the court under the APA exercising that jurisdiction to order specific relief. And it has done so in the Tenth Circuit. The problem now, and so when MODOC was decided, MODOC said three things. The Tenth Circuit said three things. First of all, it said that the only remedy there could be was a specific- the specific relief to order that specific funds that were recaptured. For example, 2008 fiscal year funds, 2009 fiscal year funds. To the extent they remained, the court could direct if it found liability in favor of the tribes. It could direct the government to direct those available funds to the offended tribe, basically. They could do that. And therefore, the second thing they said was that what is the second count here, the illegal exaction for improper use of regulation. You appear to be arguing the merits of the contract claims. Whether there's a remedy or not. Shouldn't we leave that up to the district court to decide? So you would have to decide under 1631 whether it was in the interest of justice to do so. Correct. And we also have to decide if the court had jurisdiction when the matter was filed. And I think we're all in agreement that it did. That's right. So the court had jurisdiction. So the only question is- Would have had jurisdiction, that's right. In the interest of justice, this transfer should be made. And so what we're arguing is that the- it's not in the interest of justice because when they get there, what they will find is they will be handcuffed by the finding or the legal holding of the Court of Appeals saying unless you can demonstrate that there are funds available for the particular fiscal year that you're interested in, no award can be made. You're arguing that we should not transfer because they may be faced with an adverse decision. Shouldn't we transfer and let the tribe argue and have their day in court and the opportunity to be heard on this issue? Judge Posner, in a case I think we cited, and I forget the name of it, said the trial court is allowed to peek to the merits to decide whether it's in the interest of justice. In this case, it would not be. As my opponent knows, in March of 2018- Tell me again why it would not be in the interest of justice. Because there's no money available for the tribe to pull from, basically. Unless they have a set aside- I'll tell you this. So there's three tribes here. According to stipulation entered into the parties in docket number 55 in 2012, the only- If there were funds available, then it would be in the interest of justice? If the money were available, yes. Right. Right. First of all, they have to have that money set aside. The government set aside by stipulation millions of dollars by agreements with the tribes. In the case of one tribe, Navajo was ordered to set aside money. So those tribes have relevant fiscal years for their particular claims to call from. In this case, according to docket number 55, filed in May 2012 by the parties in this case, they agreed that the only money available from 2008 that was ever recaptured from any of these tribes was, I think, $93,000 from Fort Berthold, I think it was. And so the question becomes, is there 2008 money available? Now, I focus on the year 2008 because in those other proceedings, the government filed a declaration at the behest of the district court based on the remand instructions of the circuit court to describe how much money was available and in what fiscal years. And what that document concluded was at this point, as of February 2018, there was about $3 million left. And that was all because it had been ordered to be held either by stipulation, subsequently incorporated in order, or because in the case of the Navajo, the court had ordered it to be set aside. Now, to be fair, those cases terminated on February 28th. The government had made payments in advance. And so the question is- Can the court order equitable relief of any kind? Yes, the equitable relief is, this was a big question in MODOC and this was a question that was taken up to the Supreme Court on Sir Charari and Sir Charari was denied. The question was, within the court's APA powers, could it order a remedy of damages? And of course, the APA precludes that. However, it could order specific relief. That is, as the 10th Circuit described, the district judge could order that a specific year's appropriation, to the extent that that appropriation was available, could be directed to a tribe in whose name those funds had been held or for whom they are otherwise available. So what we're saying in this case was, based on the review of the docket, we can certainly file all these things. The government declared then that as of February 23rd, 2018, this was a March 2018 declaration, there were only, I think it was $3.7 million remaining. And that was the sum of all of the money that had been held for particular tribes. Now, it just so happens that the government paid those tribes, according to a 2014 judgment, and may have used the money and the withholdings may not have. But those monies may not be released. It must be held in the favor of those tribes until the litigation is over or until the district court allows it. Now, the district court issued a judgment on February 27th, 2019, I'm sorry, last week, saying that the case was terminated. So we're now within the appeal period. And so what happens to that $3.7 million, I don't know. But only Fort Berthold, and the declaration said there was only 2008 money available. In this case, according to Docket Entry 55, stipulated in 2012 by the parties in this case, there's only one tribe, Fort Berthold, that had 2008 funds recaptured from the 2008 fiscal year funds. So in theory, that's available. That has not been set aside for them. And so, as we said in our brief here, absent any allegation that the money has been set aside for them, then there's, it does not appear to be in the interest of justice because the money that we know that exists is being held, at least currently, in favor of other tribes. What about sending back the breach of contract and fiduciary claims to the court? So this gets back to the scope issue. When we asked the court to grant interlocutory review, an argument that was credited by the court and is granted interlocutory review, we did not limit it just to the narrow question of money mandating. One of the things we had to demonstrate is that by granting this petition, this would be, this would materially advance the conclusion of the litigation. We described the extensive discovery that was about to go on and the fact that there was gonna have to be an extensive trial, and our goal was to end the litigation. So we said, at petition page 11, reversal of the trial court's holding that Nehazda's money mandating would end this action. We further said, if it is not money mandating, the trial court lacks jurisdiction to adjudicate whether or not and to what extent HUD-deprived plaintiffs or grant funds. What filing are you reading from? This is our petition, filed in 2017. To whom? To this court, describing what we were attempting to do, which was to end the action once and for all. And then finally, we said, reversal of the trial court's holding that Nehazda impliedly entitles plaintiffs to a damages remedy would terminate this Tucker Act action. And then this court credited all of that in its grant of our petition, saying, let me see, your grant says here, there's only one, there is not only a controlling question of law, but a substantial ground for difference of opinion as to whether this was a complaint that could properly be brought under the Tucker Act. An immediate review will ensure that the court of federal claims is the court of proper jurisdiction. So it was wide open as to the complete jurisdiction of this court and in deciding the case, among other things, the court having decided there's no damages remedy available, and therefore the court lacks jurisdiction in toto, the court said any such claim for relief under Nehazda would necessarily be styled in the same fashion. Well, let's assume that the court didn't know about, didn't consider, and therefore didn't evaluate whether there could be a breach of contract claim in of a breach of a funding agreement that comes from Nehazda. So why couldn't there plausibly still be a breach of contract claim? I can accept your premise, your honor, but I'll have to tell you it's counterfactual. First of all, this argument was identical to the one that the tribe briefed in their petition for a hearing at page 15. They said exactly this. They had there to demonstrate to the court that there was a point of law or a point of fact that had been overlooked or misapprehended. And so they briefed this very question to the court and the court rejected that, effectively saying, we got the point, we didn't misapprehend anything, and then you, the court, ordered the mandate issue seven days later, which was on January 12th, directing the court. No, I understand, but we also, this panel, this court can conclude that there are exceptional circumstances here to reconsider that piece of the mandate and realize that there was a mistake made, perhaps, in that appeal. And so then the next question becomes, is there an opportunity to send back to the Court of Federal Claims, even though the Court of Federal Claims did what we asked it to do, which was dismiss the entire case, but maybe crack that back open  the breach of contract claim. And so what I'm asking you right now is to get to the merits of the breach of contract claim, and why wouldn't there be a viable breach of contract claim in this case, given that there's a normal presumption that a breach of contract has a remedy for money damages? Well, the only reference to this funding document, it was, so count one is there, and it has a count, count two is a legal exaction count, count three, the trust count. And in counts one and two, they said, such action also counts, constitutes a material breach of the plaintiff's annual NAHASDA funding agreement. My opponent just admitted that what there is, is not in the record at all, and certainly was never briefed as to how it might create an independent grounds for jurisdiction, and that all it says is, the government will give money under NAHASDA, the plaintiffs will receive money under NAHASDA, and they agree to follow the law of NAHASDA. Once the court decided that NAHASDA is not money mandating, that no damages could flow from a NAHASDA action, whether they're encapsulated in just naked regulations of law, or whether they're put into a piece of paper, reminding the parties which law applies, it's the same result either way. Once the court decided there was no damages, but we didn't decide that, did we? Did we actually decide that on the marriage set question? You decided that... We denied a petition for rehearing. That there was no claim for damages, yes. The other point is, of course, since the question before the court, to ensure that this was an interlocutory review that would materially advance the resolution of the case, the court necessarily included this sentence that occurs in count one, the NAHASDA count, and count two, the illegal exaction count. And then the court was briefed and rehearing and reminded that these things should have been considered because they were never raised at all during the interlocutory review itself. So because it was within the scope and because it wasn't briefed, it's waived, but the court clearly understood it was disposing of jurisdiction and there's simply no further ground for the court, there being no claim for damages to exercise jurisdiction under any aspect, under any theory whatsoever. Thank you for your time. Mr. Rasmussen, we'll restore you to four minutes. Thank you. I wanted to start off with that the prior appeal was from a specific order. And it's not just that the contract issues were not discussed in the briefs to this court in the prior case, but that they were not discussed in that order either. But that was the order that was on appeal. The United States certainly was trying to say, well, if we win this claim, we're going to win the case. But the appeal was limited to the order and the contract and the breach of trust claims were not discussed in that appealed order. And unlike other appeals that we are then, that's what defines the scope of the appeal is was that order, that interlocutory order, and only that interlocutory order was that appropriate. So... But the government's right, isn't it? When your opposing counsel pointed out that, you know, granting interlocutory order appeals is grounded on materially advancing the litigation. And so the whole premise of the appeal was the possibility of just ending the litigation right now without any further action. Right. Which, therefore, is premised on the idea that whether NAHASDA is money mandating was the main and only event when it came to the jurisdictional question. I think that the court, this court was thinking that when it granted it. But when you then look at what is before the court in an interlocutory appeal, that doesn't then expand the interlocutory appeal because they thought that if they decided the money mandating issue, the case would go away. That there's still the only thing they can do is either affirm or reject that interlocutory order and issue appropriate orders based upon that. So if the contract claims aren't in that order, the breach of trust claims aren't in that order that is being appealed, they were just mistaken in thinking, oh, if we decide this NAHASDA issue, we're going to decide the case. They were mistaken about that. But that's still the definition of what was within the scope of the appeal. The United States keeps talking about the scope of the appeal. The definition of what was in the scope of the appeal is was it in that underlying order? It was not. The underlying order did not discuss the contract claims, did not discuss the breach of trust claims. So none of the parties briefed those because those were not part of what we were trying to discuss. Was this order appropriate? The other thing, one thing I wanted to discuss just on the effectiveness of sending the case to Colorado is when we talk about having our day in court, we don't have to accept the 10th Circuit's decision. This court itself was critical of the 10th Circuit's decision. We were critical of the 10th Circuit's decision. We asked for a certiorari for other tribes, not these tribes, but other tribes. And we still think that that decision was wrong. And we think that that court does. But we're all stuck with it, aren't we? No, we're not. These tribes here are not because there is a higher court than the 10th Circuit. Right. But that higher court denied cert. On that case. Not with these. These plaintiffs are not bound by res judicata from that prior decision. And so these plaintiffs have the right to still challenge that decision all the way up through the 10th Circuit and then the Supreme Court. And so when we make an assumption that the 10th Circuit would say you lose, that doesn't mean that we don't have the right to proceed in court and to continue on and to ultimately challenge that 10th Circuit decision if, in fact, there isn't money available. We think there is money available that can be used, that the court can fashion a remedy to get these plaintiffs' decisions. So binding circuit court precedent is irrelevant in determining whether or not to transfer to a court that may have jurisdiction when the binding circuit court precedent says it doesn't? Because there's always the chance that you can run it up the flagpole and succeed at the Supreme Court. If it's not res judicata, the 1631 standard is whether there was jurisdiction at the time it was filed. And there was. That's the 1631 standard. And then the other decisions go through the other court system, the district court system, and that we have the right to go through the district court system to present those issues. But our primary position is that we also think there is a remedy. It's not just within the 10th Circuit's decision What about the government's argument that it would not be in the interest to send this back because there really is no money available for you? We don't agree with that. We believe that the district court with full equitable powers can issue a remedy that would be effective to get these tribes the money that they are owed. These tribes have an ongoing relationship with the United States and the court can fashion a remedy that requires payment out of future years for these, what the 10th Circuit said, were illegal actions by the United States taking this money unlawfully from the tribes. But there was a wrong and we believe there can be then a remedy in the future through the future process. Thank you. Thank you very much, Mr. Rasmussen. That concludes today's hearing. This court now stands in recess.